## RAILWAY OFFICIALS ACCIDENT ASSOCIATION *v.* ARMSTRONG.

### [No. 2,688.    Filed May 24, 1899.]

ACCIDENT INSURANCE.—*Complaint.—Allegation as to Death of Insured.*—A complaint in an action on an accident insurance policy alleging that the death of the insured resulted solely from physical bodily injuries proceeding from and inflicted by external, violent, and accidental means, producing immediate death, is sufficient to show an accidental death within the meaning of a condition of the policy that " No claim of any character shall ever accrue upon this contract unless it arise because of and as the direct and immediate result of physical bodily injury effected while this contract is in force, and then only when such injury undoubtedly proceeds from, and is inflicted by external, violent, and accidental means." *p. 407.*

SAME.—*Proof of Death.—Waiver.*—A continued denial of liability by an accident insurance company, beginning at the time of the death of the insured, dispenses with any formal proof of death required by the policy. *pp. 407, 408.*

SAME.—*Proof of Death.—Waiver.*—When an accident insurance company has been notified of the death of a policy-holder, it then becomes its duty, upon request, to indicate what further proof is required, where the policy does not indicate the character of proof required, and such failure amounts to a waiver of proof. *pp. 409-412.*

SAME.—*Evidence.—Harmless Error.*—Where by the terms of an accident insurance policy proof of death was required to be made within a certain time, the admission of evidence relating to proofs of death, made after such limitation, is not reversible error, where it was shown by the special verdict what proofs were furnished and that such evidence was not relied upon by the jury. *pp. 413, 414.*

From the Marion Circuit Court.    *Affirmed.*

*Finch & Finch,* for appellant.

*Morris, Newberger & Curtis,* for appellee.

ROBINSON, J.—This appeal is prosecuted from a judgment in appellee's favor as beneficiary named in an accident insurance policy.    The assignment of errors questions the sufficiency of the first, second, third, and fourth paragraphs of complaint, the refusal to grant a new trial, and sustaining

the demurrer to the second paragraph of answer to the first paragraph of complaint.

It is argued that neither paragraph of complaint sufficiently avers an accidental death. The policy provides that "No claim of any character shall ever accrue upon this contract unless it arise because of and as the direct and immediate result of physical bodily injury effected while this contract is in force, and then only when such injury undoubtedly proceeds from, and is inflicted by, external, violent, and accidental means." Each paragraph of the complaint avers that on August 5, 1893, the insured was killed, his death resulting solely from physical bodily injuries proceeding from and inflicted by external, violent, and accidental means, the same producing immediate death. These averments are certainly sufficient. In the case of *Newman* v. *Railway, etc., Assn.,* 15 Ind. App. 29, cited by counsel, where a like provision was in question, it was simply held that it must be shown that the injuries were inflicted, or at least received accidentally. Each paragraph in question shows this.

The further objection is made to the first paragraph that there is no averment as to giving of notice and proof of death. This paragraph avers that "from the time of the death" of the insured, the company "has denied and continues to deny liability" to appellee or in any respect for the payment of the amount claimed. This language of the pleading is plain, and there is no good reason why it should be read as meaning that the company denied liability from the time it learned of the death. The pleading avers a plain fact. A continued denial of liability beginning at the time of the death dispenses with any formal proof required by the policy.

The demurrer to the second paragraph of answer to the first paragraph of complaint was properly sustained. As we have seen, this paragraph averred that the company had denied liability from the time of the death. This answer pleads in bar that no proofs of death were ever furnished as re-

quired by the policy. If there was a denial of liability from the first, no proof of death could be required.

The second paragraph of complaint is further argued to be defective for failure to aver that proofs of death were furnished within the limited time. This paragraph avers that the insured in his lifetime complied with all the provisions and conditions of the policy, and that upon the death of the insured immediate notice thereof, satisfactory to the company, was given, but that further proof of the death was not given because waived by the company. The policy contained a condition that: "Immediate notice of injury or death shall be given, in writing, addressed to the association at Indianapolis, Indiana, stating the name, occupation, and address of the member, with date and full particulars of the injury, or death, and causes thereof; and failure to give such notice shall render void all claims for such injury or death. Also satisfactory verified affirmative proof, in writing, of the same must be furnished by the claimant within seven months from the happening of such injury, or all claims are thereby relinquished." It is further averred that more than ninety days had elapsed since such waiver, and that after the expiration of the ninety days, and before suit, demand was made, and liability denied. It is true the pleading must show the waiver to have become effective before the policy was forfeited through failure to perform the conditions. Immediate notice of the death was given, and this notice was satisfactory to the company. This is not a case where no notice at all was given and an attempt made to plead a waiver. A fair construction of this paragraph is that the waiver of further proof was made at the time notice of the death was given, and, this being true, there is an averment of denial of liability within the stipulated seven months. See *Phoenix Ins. Co.* v. *Pickel*, 3 Ind. App. 332.

Counsel have presented no objection to the third paragraph of complaint, other than its failure to aver an accidental death, which has already been considered.

The fourth paragraph of complaint, after setting out the terms of the policy, and the death of the insured in the state of Ohio, avers that, at the time of the death, appellee resided at an interior village in Louisiana engaged as a servant, was without property or other means, ignorant of business, and could neither read nor write; that, at the time of his death, the insured had the policy with him, which was turned over to his brother then residing in Boston, Massachusetts, who, immediately upon receipt thereof, gave due and satisfactory notice of the death of the insured to appellant; that appellee, August 23, 1893, immediately upon learning of such death, caused a letter to be written to appellant notifying it that the insured had been killed, requesting information concerning his insurance, and stating further that she was his sister, and could offer proofs thereof if necessary; that appellant received this letter on or about August 25, 1893, and, continuing to hinder and delay appellee in establishing her claim to the insurance, purposely delayed answering the letter until September 28, 1893, and in so answering advised appellee that they were already in receipt of the information pertaining to the death, and were having letters from her brother in reference thereto, and inquiring whether appellee held the policy, or was named as beneficiary in case of death; that appellant did not address such letter "Care of Chas. Cohen, Ashwood Station, Miss.," as requested, but omitted from the address the name "Chas. Cohen," and she did not receive it promptly; that, prior to appellant's letter of September 28, 1893, to wit, September 4, 1893, and for the purpose of hindering and delaying further proof of the death of the insured, and of preventing concerted action on the part of the brother and sister in presenting the claim, appellant wrote the brother that they could not take up the matter of the settlement with him, but were compelled to settle it with the beneficiary; that they were advised of the death of the insured, and would give the matter attention. That at the time of the receipt of the letter of

September 28, by her, the policy was in the possession of the brother, at Boston, which appellant well knew, and that, because of the statement in that letter that appellant was having letters from the brother concerning the claim, she believed the matter of the settlement was being carried forward by the company and her brother, and she was ignorant of the fact that the company, prior to writing her, had notified the brother that they would not take up the matter of settlement with him, but would settle with her; that on September 28, 1893, not hearing from the company in answer to her letter, she addressed to appellant a letter, written by attorneys at New Roads, Louisiana, wherein the company was asked to give all the information it could about the matter, but appellant, further pursuing its purpose to thwart all efforts to make further proof of the claim, wrote the attorneys October 2, 1893, that appellant was then in correspondence with the beneficiary and was at the time awaiting a reply to its letter; that November 22, 1893, these attorneys further notified the company that they held the policy of insurance and asked that they be sent the necessary blanks, etc., to prove the death, and other instructions, if any; that November 27, 1893, appellant answered this letter stating they would like to get at the true facts in the case before placing the proofs in the hands of any one to make claim in the case; that appellant at all times had printed blanks for proof of death, one of which was on January 26, 1894, forwarded to the attorneys, and received by them February 1st; that prior to the receipt of this blank, neither appellee nor her attorneys knew the kind of proof desired; that in and by this blank appellee was required to furnish by way of proof the claimant's certificate, showing various facts in relation to the death, attending physician's statement, trainmaster's certificate, undertaker's certificate, and statement of eye witnesses concerning various details of the death; that the insured was killed in a railway accident near Lindsay, Ohio, his body shipped to Fremont, Ohio, thence to Chicago, Ill., and was

finally buried in a cemetery in New Orleans, La.; that upon receipt of the blank by the attorneys, they proceeded with due diligence to make proof as required, went to New Orleans, and on February 20, 1894, obtained the undertaker's certificate, then proceeded to Bayou Sara, and obtained claimant's certificate, made many unsuccessful efforts to obtain the trainmaster's certificate, but failed, and on May 15, 1894, notified the company of the difficulty in completing the proof; that on May 21, 1894, while efforts were still making to complete the proof, appellant denied all liability on the policy; that from the time of the receipt of the blank, until the expiration of the seven months, reasonable time and opportunity were not given to make such proof, and that the furnishing the same prior to that date was prevented by appellant, as above set forth, and by reason whereof, appellant has waived such right as it might otherwise have had to require verified affimative proof in writing of the death within seven months from the happening of the injuries causing the same.

It is argued that this paragraph fails to state facts showing a waiver of proof, and that the facts pleaded do not estop the company from insisting on the proof required. Some of the questions arising under this paragraph can be more properly discussed under the motion for a new trial. It is averred that immediate notice of the death of the insured was given. The policy then requires further satisfactory proof. While it is no part of a company's duty to make out a claim for a beneficiary, yet it is well settled that the company must throw no obstacle in the way of furnishing proofs. The company has seen fit to insert a clause requiring satisfactory proof within a given time, without providing in the policy what that proof shall be. When the company has been notified of the death of a policy-holder, it then becomes its duty, upon request, under the policy, to indicate what further proofs are required. Had the company indicated in the policy what these proofs should be, the case

would be quite different. When appellee, as averred, notified the company of the death, and that she was the sister of the insured and could offer proofs, and requesting information concerning his insurance, it was plainly the company's duty promptly to respond to such inquiry. The pleading shows this was not done. Without repeating the facts pleaded suffice it to say, if they are true,—and this the demurrer admits,—a cause of action is stated in this paragraph.

The language quoted from *Standard Life Ins. Co.* v. *Strong*, 13 Ind. App. 315, was used by the court in discussing a special verdict. It does not appear that the policy required an immediate notice and also satisfactory affirmative verified proof within a given time. The policy in that case provided that immediate written notice was to be given the company of "any accident or injury," and the jury found that immediate written "notice of the death" of the insured was given, without stating what the notice was. The court held that proof of the death of the insured was not what the policy called for, and that the notice, its contents not being shown, may have referred to the injury from which the insured died, or it may not. It is further held in that case that the policy did not require the company to furnish blank forms, and that the mere fact that it refused to acknowledge liability could not be taken as a waiver of proof of the injury. In the case at bar it was not the duty of the company to furnish blank forms, but when it acknowledged having received notice of the death, and stated it would give the matter attention, if it required further satisfactory proofs, it was the company's duty to indicate what further proof would be required.

In *Continental Ins. Co.* v. *Dorman*, 125 Ind. 189, it is held that the failure of the company to furnish blanks or to demand proof does not constitute a waiver where liability is not denied. This is clearly the law, but it is in no way applicable to the facts averred in the fourth paragraph of com-

plaint. The demurrers to the several paragraphs of complaint were properly overruled.

The court, over appellant's objection, permitted evidence as to communications with the company relating to proofs of death more than seven months after the death; also the introduction in evidence of partial proofs of loss. If, by the acts of the company, appellee was prevented from presenting the proofs within the seven months, she was not required to make any efforts in that respect after that time, and if partial proofs of loss were not presented until after the time, we do not see how that fact could be evidence that the proofs were presented within the time. What was subsequently done might be proper evidence of good faith efforts to procure the proof within time, especially where such efforts were a continuation of efforts made within the time to procure proofs. It might also be competent to show the character and amount of proof required as affecting the question of whether there was sufficient time to produce the proof after appellant furnished the blank requested. But it is argued that this evidence might, and probably did, mislead the jury into inferring that such partial proofs were a compliance with the terms of the policy. In addition to that provision of the policy above noticed requiring proofs to be furnished within a certain time, there was on the back of the policy in suit a slip printed in red ink, and headed "Important Notice," and which read: "In case of accident, notify immediately Wm. K. Bellis, secretary, Lock Box 93, Indianapolis, Ind., in order to make your claim good. State nature of injury received, and give your correct address. Failure to give this notice promptly invalidates your claim." In case of injury to the insured he could give this notice himself, but in case of death this notice must be given by some one else. With the general verdict the jury answered interrogatories to the effect that appellant was furnished, as required by the policy, with proofs of the death of the insured by appellee, or some one acting for her, and that this proof was furnished by letter

by a brother of the insured. It is thus seen that the jury could not have relied upon these partial proofs introduced in evidence, because they specify what proofs were furnished. So that, should it be concluded that this evidence was improper, its admission is not reversible error, for it is shown it did not influence the verdict.

It is further argued that the verdict is contrary to the evidence, and is not sustained by sufficient evidence. After a careful reading of all the evidence, we can not escape the conclusion that there is evidence to sustain the jury's verdict. Appellant offered no evidence. The evidence fairly sustains the averments of the fourth paragraph of complaint. The insured was killed in Ohio, August 5, 1893. His brother, living in Boston, went to the scene of the accident August 8. He wrote appellant August 17, which appellant says it did not receive. He wrote again August 30, giving the date of the death, number of policy, name of beneficiary, with town, county, and state where she lived; that they could write to her; and requesting an answer, giving his street number in Boston. September 4, appellant answered this letter, saying it could not take up the matter with him, but must settle the matter with the beneficiary; that it was advised of his death, and the matter would have attention. This letter was received, though addressed to wrong street number. Prior to this appellant received a letter from the beneficiary, dated August 22, in which she stated she was his sister, could produce proofs of that fact; that she had learned of the death of the insured and had been instructed to write for information in regard to some insurance which he carried, and asked for information. She gave her town, county, and state, and requested appellant to address her in care of "Chas. Cohen." It is true, she signed her maiden name, and not her name as it appeared in the policy. It is argued by appellant that it was not required to notice a letter so signed. But, in the letter of September 4, to the brother, appellant says it is advised of the death,

and this advice must have come through the sister's letter. But by the brother's letter of August 20, appellant was notified of the facts as to the beneficiary, and in its letter of September 4, it notified the brother it must settle with the beneficiary, and that the matter would have attention; yet it waits until September 28, to write to her, acknowledges receipt of her letter, and says it is having letters from her brother in reference to the claim, asking if she holds the policy and if she is named as beneficiary; that her brother had written from Boston, but did not give his street number, and asked for his address. Now, on September 4, appellant had written the brother, had his street number, and had told him it could not settle the claim with him. Why now ask for the brother's address, which it already had? Why tell her it was having letters from the brother when it had already told the brother it must settle with the sister? Why wait a month to answer her letter? On September 28, a firm of attorneys at New Roads, La., wrote appellant, giving the name of the beneficiary, inquiring about the policy; and October 2, appellant answered them that it was corresponding with the beneficiary, and was awaiting a reply to its letter. If appellant knew appellee was the beneficiary, why ask her in their letter of the 28th of September if she was the beneficiary? On November 22, these attorneys wrote that they held the policy, and asked for necessary blanks to prove his death, and other instructions. This letter was answered by appellant on November 27, saying it wrote the beneficiary September 28, and that it would like to get at the true facts before placing the proof in the hands of any one to make a claim in the case, and stating that if the attorneys would furnish particulars, it would forward blanks upon which to make the claim. What were the true facts appellant was seeking at this time? It knew of the death, knew the beneficiary, knew these attorneys had the policy. Why refuse to send them the blanks? Was the proof of death sufficient, and it was in doubt only as to the benefi-

ciary? Or did it propose to make an investigation for itself before putting the blanks in the hands of any one? January 19, 1894, Dr. O. D. Brooks wrote appellant by registered letter concerning the policy, stating the beneficiary was working for him, and had requested him to write, and that the attorneys at New Roads, La., had written appellant but had no reply, asking why the amount had not been paid, and what was necessary to secure its payment. On January 26, 1894, appellant wrote the attorneys at New Roads, saying it had had no reply to its last letter, and inclosing "a proof blank as a matter of courtesy, not waiving any rights of the association." Receipt of this proof blank was acknowledged January 31, 1894. The death ocurred in Ohio; the body was buried in Louisiana. The brother who first got the policy lived in Boston, and the beneficiary lived in Mississippi. The proof blank finally sent required the claimant's certificate, attending physician's statement, train-master's certificate, undertaker's certificate, and statement of an eye witness. We have no hesitancy in saying that the jury was warranted in concluding that the failure of the appellee to furnish proofs of death within seven months was caused by the evasive and misleading letters written by appellant to her and to those acting for her. As we have already said, it was not appellant's duty to make out appellee's claim for her, but when it had reserved the right to say what proofs would be satisfactory, and was asked what proofs were required, it was its duty, when requested, to say what it would require. This is not a case where the beneficiary relied upon the company furnishing blanks voluntarily. Appellant not only did not refuse to furnish a blank, but expressly agreed to do so. It did furnish it, but not within sufficient time for its requirements to be complied with, and the record fails to disclose any sufficient excuse for its failure to furnish the blank sooner.

Counsel argue that appellant was bound to proceed cautiously, as different persons were claiming the insurance;

the appellee, some undisclosed party represented by the attorneys at New Roads, La., and a woman in Texas, claiming to be the widow of the insured.    In the first letter written by the attorneys, they gave the name of the beneficiary.    The woman in Texas wrote one letter claiming to be the widow of the insured.    This letter was never answered.    Appellant kept a record of its policies, and it showed the beneficiary in each.    The policy was payable in case of death to the appellee, designated as the sister of the insured.    It is true, in some of the early correspondence, the place of the death of the insured was stated differently, but within a month after the death, appellant says it was advised of the death, and it seems to have had no doubt of that fact from that time on, as none of the correspondence after that makes any inquiry as to the place of death.

We do not deem it necessary to set out the evidence showing the efforts made by appellee to procure proofs after the proof blank was furnished.    Suffice it to say that, when all the facts and circumstances are taken into consideration, the remoteness of the parties from the place of the accident, the death in Ohio, and burial in New Orleans, and the difficulty in finding the persons required by the proof blank, the jury might well conclude that the time given after the obstructions were removed was not a reasonable time in which to supply such proofs.    It appears that these efforts to supply the required proof were continued until the company denied its liability.

The instructions given are not questioned, and they are certainly as favorable to appellant as it could ask.    There is evidence to sustain the verdict, and from the whole record, we believe the case was properly decided upon its merits.

Judgment affirmed.